IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

)
JAMES F. HOGAN,                                    )
                                                             )
       Plaintiff,                                      )
                                                             )
v.                                                            )        Civil Action No. 1:12-cv-11229-DPW
                                                             )
FIDELITY INVESTMENTS                       )
INSTITUTIONAL OPERATIONS             )
COMPANY, INC.,                                    )
                                                             )
       Defendant.                                   )
_____)

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

       Plaintiff James Hogan filed an action in Massachusetts Superior Court, since removed to this Court, against Fidelity Investments Institutional Operations Co., Inc. ("FIIOC").  Hogan alleges that FIIOC mishandled his request to implement a Domestic Relations Order for the assets held within a profit sharing plan account sponsored by his employer, Intel Corporation.

       FIIOC now moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Hogan's claims, because his state-law statutory and common law claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq*., and because Hogan failed to exhaust his administrative remedies prior to filing suit in federal court.  Well-established First Circuit law holds claims such as Hogan's preempted, and requires exhaustion of administrative remedies prior to filing ERISA claims.

## STATEMENT OF FACTS[1]

According to the Complaint, plaintiff James Hogan is or was an employee of Intel Corporation.  Complaint ¶4.  Defendant FIIOC is the directed recordkeeper for theIntel retirement plan in which Hogan participated.[2]  *Id*. ¶¶3-4.  A copy of the Intel Corporation Profit-Sharing Retirement Plan (the "Plan"), and summary plan descriptions ("SPDs") for the Plan for 2008 and 2009, are attached hereto.[3]

Hogan alleges that beginning on September 3, 2008, and in several subsequent letters, he asked that FIIOC transfer ownership of "the plan" – by which Hogan presumably means his account in the Plan – pursuant to a domestic relations order ("DRO") that he sent to FIIOC.  *Id*. ¶¶5, 7.

---

[1] In keeping with Fed. R. Civ. P. 12(b)(6), Fidelity here recites the facts only as they are alleged in the Complaint, and assumes that those allegations are true solely for purposes of this motion.  Fidelity does not thereby concede the accuracy of any of these allegations.

[2] Contrary to Paragraph 3 of Plaintiff's Complaint, FIIOC is not, and does not act as, a third party administrator to the Plan. Further, contrary to Paragraph 11 of the Complaint, FIIOC is not a fiduciary for the Plan.  The Complaint's allegations that FIIOC was an administrator to the Plan does not suffice to confer fiduciary status. *See, e.g.*, *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 513 (7th Cir. 2009) (holding that fiduciary status requires more than labels and conclusions).  These disputes are not, however, material to this motion.

[3] Although this motion is brought under Fed. R. Civ. P. 12, and accordingly the materials that the Court may review outside the Complaint are limited, the Court nevertheless may consider "documents the authenticity of which are [sic] not disputed by the parties; . . . official public records; . . . documents central to plaintiff's claim; or . . . documents sufficiently referred to in the complaint." *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)) (permitting consideration on Rule 12(b)(6) motion of settlement agreement that was neither appended to nor incorporated in plaintiffs' complaint); *Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998).  The Plan documents qualify in multiple categories; the Plan is expressly referred to in the Complaint, and is central to Hogan's claims; also, FIIOC knows of no basis on which the authenticity of the documents might be questioned.  *See also Stewart v. Kuligowska*, 28 F. Supp. 2d 690, 692 (D. Mass. 1998) (Young, J.) (considering MCAD charge even though not referred to at all in federal court complaint).

By way of background, under the Employee Retirement Income Security Act of 1974 ("ERISA"), a participant in a 401(k) plan generally may not assign his interest in that retirement plan to another person. 29 U.S.C. §1056(d)(1). ERISA provides an exception for cases of divorce, *see* §1056(d)(3), but only if the assignment is made by a DRO that satisfies a number of specific statutory and plan requirements. A DRO that satisfies these requirements is referred to as a "qualified domestic relations order" ("QDRO"). There are numerous ways a plan sponsor may fulfill the plan's obligation to review DROs for compliance with statutory and plan requirements. Some sponsors handle DRO qualification themselves. Others choose to provide the service through the plan's recordkeeper. Still other plan sponsors may retain an entity that specializes in DRO review. One of the services FIIOC agreed to perform at the direction of Intel is the review and qualification of DROs. DROs must be reviewed to ensure that they satisfy ERISA's requirements, as well as any other requirements specific to the plan at issue.

To qualify as a QDRO, a DRO must meet a number of requirements, including, in particular, conforming to the substantive terms of the participant's 401(k) plan, which requires a careful, substantive analysis of the plan's structure and benefits. 29 U.S.C. § 1056(d)(3).[4] According to the Department of Labor ("DOL"), the requirements of DRO review can be difficult to satisfy: "[M]any domestic relations orders fail initially to qualify . . . because they fail to take into account the plan's provisions or the participant's actual benefit entitlements." QDROs: The Division of Retirement Benefits Through Qualified Domestic Relations Orders, Dep't of Labor, at http://www.dol.gov/ebsa/publications/qdros.html (last visited July 30, 2011).

---

[4] To qualify, the DRO must not (1) "provide any type or form of benefit, or any option, not otherwise provided under the plan," (2) "require the plan to provide increased benefits," or (3) interfere with required payments under a previously approved QDRO. *Id.* §1056(d)(3)(D). The DRO also must contain certain specified details about the payees and benefit-payment schedule. 29 U.S.C. § 1056(d)(3)(C)(i)-(iv).

Hogan alleges that FIIOC did not comply with his requests in a reasonably timely manner. *Id*. ¶¶6, 12.[5]  As a result of the delay, Hogan alleges, his Plan account lost value, and he incurred consequential damages consisting of a contempt order and attorneys' fees. *Id*. ¶¶14-15. He alleges that FIIOC's delays were a breach of fiduciary duty, negligent, and a breach of contract, and asserts a claim for promissory estoppel. *Id*. ¶¶20-29.  He also alleges that FIIOC's conduct amounts to "unfair and deceptive trade practices" within the meaning of Mass. Gen. L. c. 93A.

Hogan filed suit in Massachusetts Superior Court, and FIIOC removed the action to this Court.

## ARGUMENT

### A.       ERISA Preempts Hogan's Claims.

The essence of Hogan's claim is that FIIOC unduly delayed in "transfer[ring] ownership of the plan," meaning of the funds in Hogan's Plan account.  Complaint ¶5.  He alleges a variety of state common law and statutory claims resulting from that alleged failure.  As all of those claims expressly relate to Hogan's claim with respect to FIIOC's performance of recordkeeping services to an ERISA-governed plan at the direction of Intel. Such claims are preempted and must be dismissed.

---

[5] Though again not material to this motion, what Hogan fails to mention is that FIIOC immediately and repeatedly notified him and his attorney in letters and phone calls that the DROs he sent to FIIOC failed to specify his account/social security number, the name of the Plan in which he participated and failed to comply with both Plan and ERISA requirements. Due to these deficiencies, FIIOC was unable to qualify the DRO under the Plan rules and ERISA.  On March 16, 2009, Fidelity received an amended DRO that was eligible for qualification under the terms of the Plan and ERISA.  Fidelity therefore qualified the DRO and segregated Mr. Hogan's Plan account and established a Plan account in the name of the alternate payee on March 16, 2009.

The Plan is governed by ERISA because it is a qualified retirement plan established by an employer for the purpose of providing employees and their beneficiaries with retirement benefits. ERISA Sections 3(2), 3(5), and 4(a); 29 U.S.C. §§1002(2), 1002(5), and 1003(a). ERISA's broad preemption provision, Section 514(a), 29 U.S.C. §1144(a), provides that ERISA "shall supersede any and all state laws insofar as they now or hereafter relate to any employee benefit plan." The phrase "relate to" has been construed broadly to include any state law that has a "connection with or reference to" an employee benefit plan. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96-97 (1983); *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985). Thus, any state law that "relates to" an employee benefit plan is preempted by ERISA. *Pilot Life*, 481 U.S. at 57 (relying on clear expression of Congressional intent that ERISA's civil enforcement scheme be exclusive, Supreme Court determines state common law claims based on improper processing of benefit claim are preempted because they relate to ERISA plan). ERISA preempts any state law that refers to or has a connection with an ERISA plan "even if the law is not specifically designed to affect such plans, or the effect is only indirect," and even if the law is consistent with ERISA's substantive requirements. *Dist. of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125 (1992); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990). "[A] state cause of action that provides an alternative remedy to those provided by the ERISA civil enforcement mechanism conflicts with Congress' clear intent to make the ERISA mechanism exclusive." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 n.4 (2004).

The First Circuit has recognized ERISA's broad preemptive reach and given a broad meaning to the term "relate to." To determine whether a state law claim "relates to" ERISA, the First Circuit has looked to the "objectives of the ERISA statute" and the "real nature of the plaintiff's claims, regardless of how they are characterized in his complaint." *Zipperer v.*

*Raytheon Co.*, 493 F.3d 50, 53-54 (1st Cir. 2007).  "[C]auses of action that provide alternative

enforcement mechanisms to ERISA's own enforcement scheme" are preempted.  *Id.* at 53

(citations omitted); *see also  McMahon v. Digital Equip. Corp.*, 162 F.3d 28, 34, 38-39 (1st Cir.

1998) (affirming that claims for short-term disability benefits, alleging "negligence, breach of

contract, and interference with an advantageous business relationship are all preempted [because

they] rel[y] on [Plaintiff's] assertion that she was . . . eligible . . . for short-term disability

benefits . . . [or] require her to prove the terms of an ERISA plan," and her exclusive remedy was

pursuant to ERISA); *Bellino v. Schlumberger Techs., Inc.*, 753 F. Supp. 391, 393-94 (D. Me.

1990) (holding claim under Maine wage payment statute, assuming it would otherwise provide a

remedy for the denial of severance benefits, was preempted), *aff'd on other grounds*, 944 F.2d 26

(1st Cir. 1991).

 That Hogan has attempted to label his Plan-related claims as arising under state law does

not control the court's analysis.  *See, e.g., Davila*, 542 U.S. at 214 ("[D]istinguishing between

. . . claims based on the particular label affixed to them would 'elevate form over substance and

allow parties to evade' the pre-emptive scope of ERISA . . . .") (internal citations omitted);

*Griggs*, 237 F.3d at 379 (in considering whether ERISA preempts claim, court looks more

closely at the factual nature of the claim than any state law label plaintiff applies to the claim).

 Hogan's state law claims all arise out of a single alleged wrong: that FIIOC did not

properly discharge its obligations in reviewing and qualifying his DRO under the Plan's

provisions and ERISA and, only then, segregating his Plan account in accordance with the

qualified DRO.  None of Hogan's purported state law claims could have arisen absent the

existence of the Plan or Hogan's belief that he was entitled to benefits thereunder.  As the Plan

account segregation that Hogan sought was subject to ERISA rules and within a plan governed

by ERISA, "interpretation of the [Plan] terms [would] form[] an essential part of [the state law] claim[s], and [state law] liability would exist here only because of [FIIOC's] administration of ERISA-regulated benefit plans." *Davila*, 542 U.S. at 213.  Thus, all state law claims are preempted and must be dismissed. *See, e.g., McMahon*, 162 F.3d at 38-39 (affirming preemption of negligence, breach of contract, and tortuous interference state-law claims based on denial of severance benefits); *Bellino*, 753 F. Supp. at 393-94 (holding state-law wage payment claim was preempted where it would provide an alternative remedy for the denial of severance benefits).

Thus, for example, in *Zipperer*, the plaintiff claimed that, because of negligent recordkeeping, his employer gave him an erroneous estimate of his retirement benefits, and he voluntarily retired early in reliance on the incorrect information.  493 F.3d at 51.  As with Hogan, the gravamen of Zipperer's claim was that the plan service provider had negligently discharged its obligations under the plan.  The First Circuit held the claims preempted:

> [E]ven a narrow reading of section 514(a)'s "related to" provision yields a conclusion that Zipperer's claims are preempted, and that is because the claims can only be evaluated with respect to Raytheon's recordkeeping responsibilities for the plan. Such responsibilities were part and parcel of Raytheon's plan administration.  Subjecting Raytheon's plan administration to the state law scrutiny Zipperer seeks would conflict with ERISA's proscription against state law "mandat[ing] plan administration" and would also impermissibly create "an alternative enforcement scheme" to ERISA's own recordkeeping and reporting requirements.

493 F.3d at 54 (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co*., 514 U.S. 645, 658-59 (1995)); *see also Degnan v. Publicker Indus., Inc.,* 83 F.3d 27 (1st Cir. 1996) (state law misrepresentation claims preempted, where former employer allegedly reneged on promises made regarding plaintiff's retirement benefits); *Danca v. Private Health Care Sys., Inc*., 185 F.3d 1, 7 (1st Cir. 1999) (affirming preemption of negligent supervision and training claims to avoid "a threat of conflicting and inconsistent state and local regulation of the administration of ERISA plans"); *Turner v. Fallon Community Health Plan*, 127 F.3d 196, 199

(1st Cir. 1997) (ERISA preempts state claims "to enforce rights under an ERISA plan or to obtain damages for the wrongful withholding of those rights," noting that "this construction has been repeatedly followed").

### B.    Hogan Has Failed To Exhaust His Administrative Remedies.

Because Hogan asserts only state-law claims, and those claims are preempted by ERISA, the Complaint must be dismissed.  But even if the Court were to treat those state-law claims as somehow equivalent to, or interpretable as, claims under ERISA, dismissal still would be appropriate because Hogan has not exhausted his administrative remedies as to any ERISA claim.

While the civil enforcement provision of ERISA §502, 29 U.S.C. §1132, does not contain an explicit exhaustion requirement, courts have uniformly held that Congress intended claimants to exhaust administrative procedures before filing suit to clarify their rights under ERISA plans. Courts have recognized that ERISA requires every pension plan to contain an internal claims review and appeal procedure, ERISA §503, 29 U.S.C. §1133, and authorizes the Secretary of Labor to prescribe regulations governing such administrative remedies, which the Secretary has done.  *See* 29 C.F.R. §2560.503-1.

In compliance with ERISA §503 and the regulations thereunder, the Plan contains procedures for claims administration and review, and expressly requires a claimant, like Hogan, to submit a claim to the designated Plan Administrator.  *See* Ex. 1, 2008 SPD, at 18.41 (describing the Plan's claims procedures:  "If you or your beneficiary disagrees with a plan benefit determination, you may make a claim," providing instructions to make a claim, and explaining the review and appeal process).  There is no allegation in the Complaint that Hogan invoked these procedures, and thus it is undisputed that Hogan filed this lawsuit prematurely because he does not and could not allege that he ever submitted a claim to the Plan Administrator.

Thus, no administrative review has occurred or is available for consideration by the Court, and there is no administrative record for the Court to review.  Plaintiff's failure to allege exhaustion of administrative remedies mandates dismissal or remand to the administrator to accomplish exhaustion.

"A plaintiff who wishes to raise an ERISA claim in federal court must first exhaust all administrative remedies that the fiduciary provides."  *Medina v. Metropolitan Life Ins. Co.*, 588 F.3d 41, 47 (1st Cir. 2009); *Madera v. Marsh USA, Inc.*, 426 F.3d 56, 61 (1st Cir. 2005); *Morais v. Central Beverage Corp. Union Employees' Supplemental Retirement Plan*, 167 F.3d 709, 712 n.4 (1st Cir. 1999) (describing the exhaustion requirement as "well settled" and "firmly established").  The exhaustion requirement serves a number of valuable purposes.  The Fifth Circuit has explained those purposes as follows:

> ...to: (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not <u>de novo</u>.

*Denton v. First National Bank*, 765 F.2d 1295, 1300, *reh'g denied en banc,* 772 F.2d 904 (5th Cir. 1985); see also *Kross v. W. Elec. Co., Inc.*, 701 F.2d 1238, 1244 (7th Cir. 1983) ("To make every claim dispute into a federal case would undermine the claim procedure contemplated by the Act. It would also burden employee benefit funds with substantial expense. We believe that Congress, in adopting ERISA, did not require or contemplate such a result.").  Hogan's failure to seek review under the Plan's provisions – which are themselves mandated by ERISA, *see* 29 U.S.C. §1133(2) – is fatal to any attempt to salvage an ERISA claim from his preempted state law claims, and the Complaint must be dismissed.

Nor can Hogan avoid this requirement by arguing that exhaustion would be futile.  There is a futility exception to the exhaustion rule, but it is quite narrow.  In particular, the First Circuit holds that a plaintiff cannot excuse a failure to exhaust by arguing that there is no point in having the plan administrator review allegations that the administrator itself acted improperly.  *See, e.g., Madera*, 426 F.3d at 63; *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 825-26 (1st Cir. 1988).  In any case, the Complaint does not allege any bias or hostility that would render resorting to administrative remedies futile.  Nor can Hogan claim that a post-lawsuit letter constitutes exhaustion of the claims procedure.  Informal means do not serve as a substitute for the administrative process.  *Bourgeois v. Pension Plan of Santa Fe Int'l Corp.*, 215 F.3d 475, 480 n. 14 (5th Cir. 2000) ("allowing informal attempts to substitute for the formal claims procedure would frustrate the primary purposes of the exhaustion requirement.")

### C.  FIIOC Is Not A Proper Party Defendant To An ERISA Action.

Hogan's state-law causes of action against FIIOC are essentially "artfully pled" claims for benefits under 29 U.S.C. §1132(a)(1)(B).  Courts have consistently held that a claim for benefits under §1132(a)(1)(B) can only be brought against the Plan itself or against both the Plan and the Plan Administrator.[6]  FIIOC is neither.

---

[6] *Haydel v. Healthsmart Benefit Solutions, Inc*., 2009 WL 2856330, at *3 (E.D. La. 2009); *Sullivan v. Monsanto Co*., 555 F. Supp. 2d 676, 685 (E.D. La. 2008) (finding that Medical Benefits Plan for Salaried and Non-Union Hourly Retirees was the only proper defendant for any cause of action under section 502(a)(1)(B) for recovery of Plan benefits and dismissing the plaintiff's claim against all of the defendants named in the complaint except the employee benefit plan itself) (citing *Powell v. Eustis Engineering Co*., 2003 WL 22533650 at *2 (E.D. La. 2003) (granting the defendants' motion to dismiss as to claims under ERISA §502(a)(1)(B) against all defendants except the plan)); *Roig v. The Limited Long Term Disability Program*, 2000 WL 1146522 (E.D. La. 2000), *aff'd*., 275 F.3d 45 (5th Cir. 2001) (ruling that a plan is the only proper defendant in a case for benefits under ERISA §502(a)(1)(B) after finding "no case in which a court authorized relief against any entity other than the plan itself for wrongful denial of plan benefits").

First, FIIOC obviously is not the Plan.  Under ERISA, the plan is a distinct "entity" that can "sue or be sued."  29 U.S.C. §1132(d)(1).  Under ERISA, a "plan" is a program established or maintained by an employer to provide benefits to participants and beneficiaries.  29 U.S.C. §§ 1002(1) and 1002(2) (defining "employee welfare benefit plan" and "employee pension benefit plan").  Plaintiff has not alleged and cannot allege that FIIOC is the "plan" in this case.  Second, it is equally clear that FIIOC is not, nor has it ever acted as, the Plan Administrator as defined by ERISA.[7]  FIIOC has at no time exercised discretionary authority or responsibility in the administration of the Plan, rather that is the role of the Plan Administrator. Therefore, FIIOC is not a proper party defendant in this suit, and Plaintiff's claims against FIIOC should be dismissed.

## CONCLUSION

Plaintiff's claims are preempted by ERISA, and even if his claims could be recharacterized as ERISA claims he has not exhausted his administrative remedies, as the statute requires.  And in any case, FIIOC is not a proper party defendant.

For the foregoing reasons, defendant's motion should be granted, and the Complaint should be dismissed with prejudice.

---

[7] An "administrator," under ERISA is "the person specifically so designated by the terms of the instrument under which the plan is operated . . . ."  29 U.S.C. § 1002(16)(A)(i).

Respectfully submitted,

FIDELITY INVESTMENTS
INSTITUTIONAL OPERATIONS
COMPANY, INC.

By its attorneys,


/s/ Mark W. Batten
Mark W. Batten (BBO# 566211)
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110
(617) 526-9850

Date: July 30, 2012

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party to this action by operation of the Court's ECF filing system, this 30th day of July, 2012.


/s/Mark W. Batten
Mark W. Batten

6880/28042-046 current/31199390v1