```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS


JAMES F. HOGAN,                     )
                                    )
            Plaintiff,              )   CIVIL ACTION NO.
                                    )   12-11229-DPW
v.                                  )
                                    )
FIDELITY INVESTMENTS                )
INSTITUTIONAL OPERATIONS COMPANY,   )
INC.                                )
                                    )
            Defendant.              )
                                    )
```

MEMORANDUM AND ORDER
March 29, 2013

James Hogan brought this action against Defendant Fidelity Investments Institutional Operations Company, Inc. in state court alleging that Fidelity negligently administered Mr. Hogan's profit sharing account with his employer, Intel.  His Complaint also brings claims for breach of fiduciary duty, promissory estoppel, breach of contract, and deceptive and unfair trade practices under M.G.L. 93A.  Fidelity removed this action to federal court and has moved to dismiss arguing: preemption by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001; failure to exhaust administrative remedies; and that Fidelity is not the proper defendant for an ERISA action.  I will dismiss Mr. Hogan's state law claims as preempted.

As an Intel employee, Mr. Hogan participated in a profit-sharing retirement plan, for which the Complaint alleges Fidelity acted as third-party administrator.  (*See* Compl. ¶ 3.)  Following

proceedings in the Middlesex County Probate and Family Court, the court issued a Domestic Relations Order ("DRO"), ordering Mr. Hogan to transfer ownership of his profit-sharing retirement account.  On September 3, 2008, and through regular correspondence and phone conversations over the following several months, Mr. Hogan requested that Fidelity transfer ownership of his account in accordance with the DRO.  (*See* Compl. ¶¶ 5-8.) The Complaint alleges that for several months, Fidelity responded that "it could not locate" Mr. Hogan's account, (*see* Compl. ¶ 7), and that, as a result of the delay, Mr. Hogan's account lost value and Mr. Hogan himself incurred liability for contempt of the state court order.  (*See* Compl. ¶¶ 13-15.)  Mr. Hogan never pursued his administrative remedies before filing his law suit.

### A.   *ERISA Preemption*

ERISA preempts Mr. Hogan's claims because they "relate to" the way in which Fidelity administered an ERISA-qualifying plan. ERISA broadly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a).  This preemption applies "even if the law is not specifically designed to affect such plans, or the effect is only indirect."  *Dist. of Columbia* v. *Greater Washington Bd. of Trade*, 506 U.S. 125, 130 (1992).

The ERISA statute also carves out a number of exceptions to the broad rule of preemption.  One of these exceptions provides

that ERISA's preemption clause "shall not apply to qualified domestic relations orders." 29 U.S.C. § 1144(b)(7). However, this exempts state court DROs themselves, not claims against the plan administrator for improperly handling the DRO that do not implicate questions of the proper beneficiary.

In interpreting ERISA preemption, courts must "look . . . to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Hampers v. W.R. Grace & Co.*, 202 F.3d 44, 51 (1st Cir. 2000). ERISA generally does not allow a plan beneficiary to assign or transfer his rights. *See* 29 U.S.C. § 1056(d)(1). However, it provides an exception in cases of divorce where a state family court orders such a transfer in a DRO that meets certain requirements, known as a qualified domestic relations order ("QDRO"). *See* 29 U.S.C. § 1056(d)(3). The specific preemption exception for DROs is designed to give effect to § 1056(d)(3), which would be meaningless without this express exemption. In the absence of such an exception, ERISA would preempt any family court DRO purporting to order the transfer or assignment of a benefit plan as "related to" the plan. Then federal law, namely ERISA's general prohibition on transfers and assignments, would control. Thus, § 1056(d)(3) would be meaningless because federal law does not govern divorce settlements and federal courts do not have the power to issue DROs.

Mr. Hogan's state law claims regarding improper administration of the plan fall outside both the purpose and the language of the DRO preemption exception.  The cases Mr. Hogan cites all stand for the unremarkable proposition that ERISA does not preempt the DRO itself if it qualifies as a QDRO.  *See Unicare Life & Health Ins. Co.* v. *Phanor*, 472 F. Supp. 2d 8, 9-10 (D. Mass. 2007); *Metropolitan Life. Ins. Co.* v. *Hanson*, No. 08-cv-248, 2009 WL 3268640, at *2 (D.N.H. Oct. 1, 2009); *MacKay* v. *Estate of Harris*, No. 03-cv-150, 2004 WL 356701, *2-3 (D.Me. Feb. 25, 2004).  ERISA also permits state law claims arising under a QDRO to determine the proper plan beneficiary, *see MacKay*, 2004 WL 356701 at *3 ("ERISA not only permits alienation of plan benefits by means of a QDRO, but also permits state law causes of action to go forward if they arise under a QDRO."), but this does not extend to claims against a plan administrator for improper administration of the plan, which do not "arise under a QDRO," but are merely tangential to it.  Mr. Hogan does not ground his claim in any right conferred by the QDRO, but in state statutory and common law.  ERISA preempts such state law insofar as it conflicts with ERISA provisions governing administration of benefits plans.

At bottom, Mr. Hogan's claims amount to demands for consequential damages resulting from the way in which Fidelity administered the plan.  ERISA preempts such claims.  *Cf. Zipperer*

v. *Raytheon Co., Inc.*, 493 F.3d 50, 54 (1st Cir. 2007) (holding that ERISA preempted plaintiff's claims for misrepresentation and promissory estoppel when he retired from his job in reliance on the plan administrator's allegedly negligent misrepresentations regarding the benefits to which plaintiff would be entitled); *Carlo* v. *Reed Rolled Thread Die Co.*, 49 F.3d 790 (1st Cir. 1995) (same).  As the First Circuit held in *Zipperer*, "subjecting [Defendant's] plan administration to the state law scrutiny [Plaintiff] seeks would conflict with ERISA's proscription against state law 'mandat[ing] plan administration' and would also impermissibly create 'an alternative enforcement scheme to ERISA's own . . . requirements."  *Zipperer*, 493 F.3d at 54 (alterations in original) (quoting *New York State Conf. of Blue Cross & Blue Shield Plans* v. *Travelers Ins. Co.*, 514 U.S. 645, 658-59 (1995)).[1]  Mr. Hogan's claims seek to apply state law

---

[1] I note that in *McMahon* v. *Digital Equipment Corp.*, 162 F.3d 28 (1st Cir. 1998), the First Circuit held that ERISA did not preempt a breach of contract claim against Digital for its alleged promise to relocate the plaintiff as a disability accommodation because the breach of contract claim required the plaintiff to show only that "Digital agreed to pay for relocation, if she decided to request it" and the plaintiff "could make this showing without reference to any Digital disability benefit plan."  *Id.* at 39.  I nevertheless reject any argument that Mr. Hogan could show that Fidelity acted negligently without reference to the retirement benefits plan or ERISA, as described in *McMahon*, or that *Zipperer* and *Carlo* are distinguishable because they both involved negligent interpretations of the plan itself, not merely delayed implementation, as here.  It is apparent in this case that the court would ultimately need to construe ERISA and interpret the retirement plan in order to determine whether Fidelity's actions

scrutiny to plan administration governed by ERISA's own requirements and are therefore preempted.

### B. *Exhaustion*

ERISA requires that all employee benefits plans include an internal grievance procedure.  *See* 29 U.S.C. § 1133.  Under well-established First Circuit precedent, "[a] plaintiff who wishes to raise an ERISA claim in federal court must first exhaust all administrative remedies that the fiduciary provides." *Medina* v. *Metropolitan Life Ins. Co.*, 588 F.3d 41, 47 (1st Cir. 2008).  Because I have found that ERISA preempts Mr. Hogans claims, he is obligated to show he has exhausted all administrative remedies before bringing an ERISA action in this court.

Mr. Hogan does not allege that he has exhausted his administrative remedies or that exhaustion would be futile.  He also does not challenge Fidelity's representation that he has never filed an internal grievance.  He argues only that his claim does not fall within ERISA and its grievance procedure.

---

fell outside the reasonable range of conduct for a plan administrator.  The facts of this case closely resemble those of *Zipperer* and *Carlo*, where the plaintiffs sought consequential damages for misfeasance in the administration of the plan, as opposed to those of *McMahon*, where the plaintiff sought damages for breach of an agreement to relocate her that was closely related to her disability, but not specifically governed by the disability plan.

The plan in this case includes such a procedure by providing that "[i]f you or your beneficiary disagrees with a plan benefit determination, you may make a claim."  (Declaration of Haviva Graeber, dated July 30, 2012, Ex. 1 at 18.41.)  Mr. Hogan argues that because the claims process covers "disagree[ments] with a plan benefit determination," it does not contemplate this action, which is a dispute over the manner in which Fidelity administered the plan, rather than the particular benefit determination itself.  I do not agree.  A claim for negligence, breach of contract, and unfair trade practice in the administration of a plan benefit is necessarily a disagreement with a plan benefit determination - specifically, the way in which the proper beneficiary was determined. *See Belanger* v. *Healthsource of Maine*, 66 F. Supp. 2d 70, 73 (D. Me. 1999) (dismissing negligence, breach of contract and Unfair Trade Practices Act claims for failure to exhaust administrative remedies).  Given Mr. Hogan's continued choice not to allege the exhaustion predicate to an ERISA action, there is no occasion here for converting Mr. Hogan's claim from a state court action into an ERISA action or affording him an opportunity to replead with an

express ERISA claim.[2]  Consequently, I will dismiss Mr. Hogan's claims for failure to exhaust administrative remedies.

          *          *          *

Because I find that ERISA preempts Mr. Hogan's claims, I conclude that the formal predicate requirements of ERISA must be followed. Mr. Hogan has failed to do so in that he did not exhaust administrative remedies before bringing his action to court.  I do not reach the question whether Fidelity Investments Institutional Operations Company, Inc. is the proper Defendant for a properly predicated ERISA action by Mr. Hogan.

### IV.  CONCLUSION

For the foregoing reasons, I GRANT Defendant's Motion to Dismiss (Dkt. 10), and DENY Plaintiff's cross-motion to remand (Dkt. 15).  I direct the Clerk to enter judgment for the Defendant.

                                          ***/s/ Douglas P. Woodlock***
                                          DOUGLAS P. WOODLOCK
                                          UNITED STATES DISTRICT

---

[2] I note that it is likely that Mr. Hogan chose and choose not to pursue this course because ERISA limits appropriate remedies to the benefits due, injunctive relief, and declaratory relief, *see* 29 U.S.C. § 1132(a)(1)(B), and cannot support a claim for compensatory damages, *see Conners* v. *Maine Medical Center*, 42 F. Supp. 2d 34, 57 (D. Me. 1999), Mr. Hogan has already received what he would be entitled to under the grievance process or in a civil action: the transfer of his account in accordance with the DRO.